UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERIC D. KAVULAK,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              09-CV-333S

LAIMIS JUODZEVICIUS, A.V. INC., and
TRANSPORTATION SOLUTIONS GROUP,
LLC.

                              Defendants.

## I.  INTRODUCTION

        Plaintiff commenced the present action in the Supreme Court of the State of New

York, Erie County, in December 2008 against Defendants Laimis Juodzevicius and A.V.,

Inc. ("the AV Defendants"). Defendants removed the case to this Court, asserting federal

jurisdiction based on diversity.  Plaintiff subsequently obtained leave and filed an amended

complaint naming Transportation Solutions Group, LLC ("TSG") as an additional

Defendant. The motions presently before the Court include TSG's motion for summary

judgment dismissing the complaint against it, Plaintiff's motion for partial summary

judgment on the issues of negligence and serious injury under New York Insurance Law

§ 5102(d), and the AV Defendants' cross-motion for partial summary judgment on the issue

of punitive damages.   The Court finds all motions fully briefed and oral argument

unnecessary.

        For the reasons that follow, TSG's motion is granted, Plaintiff's motion is granted

in part and denied in part, and the AV Defendant's motion is granted.

1

## II. BACKGROUND

The present action is the result of an accident occurring in Buffalo, New York, on May 11, 2008. As part of his employment with AV, Defendant Juodzevicius was driving a tractor trailer carrying a shipment of plastic yogurt cups from the Chicago area through Buffalo to Syracuse.  (Juodzevicius Dep at 22 , Aff of Terrence Higgins, Esq, Ex G, Docket No. 76; Dep of Vladas Simkus at 25, Aff of John Wallace, Esq, Ex H, Docket No. 75.)  AV and TSG describe TSG as the 'broker' for the load; that is, TSG contracted with Berry Plastics Corporation, the shipper, and then arranged for AV to actually transport the shipment.  (Simkus Dep at 22-23, Wallace Aff Ex H, Docket No. 75; Wallace Aff Ex S (freight broker contract between TSG and Berry Plastics); Simkus Dep at 24-26, Higgins Aff Ex C, Docket No. 83.)

At approximately 11 P.M. that night, Plaintiff was working as a member of a bridge cleaning crew as part of his employment with the New York State Thruway Authority. (Pl's Dep at 18-19, Higgins Aff Ex E, Docket No. 76.)  Plaintiff was sitting inside a dump truck with an attenuator on the rear, which Plaintiff described as a crash box designed to absorb the impact of a collision.  (Id.)  The truck was positioned at the head of a lane closure with an arrow indicator, and approaching traffic passed two additional signs warning of the closure before approaching his vehicle.  (Id.; Juodzevicius Dep at 78-88, Higgins Aff Ex G, Docket No. 76; Higgins Aff Ex I.)  He was wearing a hard hat at the time, and the truck was struck from behind shortly after he put on his seatbelt.  (Pl's Dep at 33-35.)  Prior to the collision, Defendant Juodzevicius had been driving in the middle lane after attempting to slow down upon entering the construction zone. (Juodzevicius Dep at 54-55.)

Plaintiff's initial Complaint filed in New York State Supreme Court contained two

2

causes of action.   The first alleged that Defendant Juodzevicius' negligence caused Plaintiff severe injuries within the meaning of Section 5102(d) of New York Insurance Law, and that Defendant AV was vicariously liable for the negligence of its employee.   (Notice of Removal, Ex B, Docket No. 1.)   The second cause of action alleges that these defendants are liable for punitive damages for the intentional and purposeful operation of the tractor-trailer for excessive hours, and the failure to make and keep proper records of those hours.   (Id.)

After being granted leave, Plaintiff filed an Amended Complaint adding TSG as a defendant and alleging in the first cause of action that TSG "is vicariously liable for any negligence of defendant Juodzevicius in his operation of the involved A.V., Inc. vehicle."[1] (Am. Compl. ¶ 25, Docket No. 45.)

### III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury

---

[1] Although the second cause of action generically refers to the liability of "defendants," this claim was voluntarily dismissed by Plaintiff as against TSG in a stipulation filed on October 29, 2012 and so-ordered by this Court on November 5, 2012. (Docket Nos. 73, 74.)

could return a verdict for the nonmoving party.' " <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Anderson</u>, 477 U.S. at 248), *cert denied*, 540 U.S. 811 (2003).  A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).

**A.    TSG's Motion for Summary Judgment**

TSG argues that it cannot be held vicariously liable for Plaintiff's injuries because it did not own or operate the tractor-trailer involved in the accident, and its only involvement was as a property broker that simply arranged for its independent contractor, AV, to deliver a shipment of goods for a TSG customer, Berry Plastics.  (TSG Mem of Law at 1, 10-13, Docket No. 75.)  TSG further argues that it did not set Defendant Juodzevicius' schedule or route for delivering the shipment, never communicated with this driver while he was en route, and did not otherwise control or have the right to control the manner in which Juodzevicius performed his job.  (TSG Mem of Law at 11-14.)

TSG has also moved to strike the affidavit that Plaintiff's expert witness submitted in opposition to this motion, and to preclude any future testimony from this witness. (TSG Mem of Law, Docket No. 107.)  TSG argues that this witness's testimony is unreliable under Federal Rule of Evidence 702.  Plaintiff opposes the motion on the ground that the proposed witness, David G. Dwinell, is a well qualified expert on the issue of broker liability in the trucking industry. (Pl' Mem in Opp'n, Docket No. 120.)

1.    <u>TSG's Status as a Motor Carrier</u>

Plaintiff argues in opposition to TSG's motion for summary judgment that the issue of control is not determinative because TSG was acting as a motor carrier under federal

4

law, not a property broker, at the time of the accident and therefore is liable as such. (Pl's Mem in Opp'n at 2, 4-13, Docket No. 84; Higgins Aff ¶ 15, Docket No. 83.) Plaintiff's submissions fail to articulate why this Court should consider TSG's status as a motor carrier under federal law as relevant to the state law negligence claim asserted against it. In any event, this argument is a bit of a red herring, inasmuch as the motor carrier cases on which Plaintiff relies discuss claims for property damage under the Carmack Amendment, which is inapplicable to the present case. Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365(PGG), 2011 WL 671747, *2-3 (S.D.N.Y. Feb. 18, 2011); KLS Air Express v. Cheetah Trans., No. CIV. S-05-2593FCD DAD, 2007 WL 2428294, *3-4 (E.D. Cal. Aug. 23, 2007); Hewlett-Packard Co. v. Brother's Trucking Enter., 373 F. Supp. 2d 1349, 1351-52 (S.D. Fla. 2005); Delta Research Corp. v. EMS, Inc., No. 04-60046, 2005 WL 1981775, *2 (E.D. Mich. Aug. 16, 2005); Nebraska Turkey Growers Coop. Ass'n v. ATS Logistics Servs., No. 4:05CV3060, 2005 WL 3118008, *3-4 (D. Neb. Nov. 22, 2005); CGU Int'l Ins., PLC v. Keystone Lines Corp., No. C-02-3751SC, 2004 WL 1047982, *1 (N.D.Cal. May 5, 2004); Custom Cartage, Inc. v. Motorola, Inc., No. 98 C 5182, 1999 WL 965686, *2, 7-8  (N.D.Ill. Oct. 15, 1999); Phoenix Assur. Co. v. K-Mart Corp., 977 F.Supp. 319, 324 (D.N.J. 1997); Peerless Importers v. Cornerstone Sys. Inc., 26 Misc. 3d 1223 (A), 907 N.Y.S.2d 439, *2 (Sup. Ct. N.Y. County Jan. 5, 2010).

"The Carmack Amendment to the Interstate Commerce Act of 1887 governs the liability of motor carriers for loss or damage to goods transported in interstate commerce." Nipponkoa Ins. Co., 2011 WL 671747 at *2 (citing 49 U.S.C. § 14706(d)); Phoenix Assur. Co., 977 F.Supp. at 324 (Carmack Amendment provides exclusive remedy for loss of goods by motor carriers); see Project Hope v. M/V IBN SINA, 250 F.3d 67, 73 n. 6 (2d Cir.

2001).  "The Carmack Amendment did this both by establishing a single uniform regime for recovery by shippers directly from the interstate common carrier in whose care their items are damaged, and by preempting the shipper's state and common law claims against a carrier for loss or damage to goods during shipment." Project Hope, 250 F.3d at 73 n. 6 (internal quotation marks, brackets, and citations omitted).  By enacting this amendment, Congress intended:

> to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Reider v. Thompson, 339 U.S. 113, 119 (1950). Accordingly, the Carmack Amendment gives a shipper the "right to proceed against the initial carrier in a case where damage or loss occurred while the shipment was in the hands of a subsequent carrier." Aaacon Auto Transp., Inc. v. State Farm Mut. Auto. Ins. Co., 537 F.2d 648, 653 (2d Cir.1976) "Carmack effectively codified the strict liability rule that governed the liability of common carriers at common law." Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co., 456 F.3d 54, 59 (2d Cir. 2006) (citing Missouri Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 137 (1964)), abrogated on other grounds by Kawasaki Kisen Kaisha Ltd. v. Regal–Beloit Corp., 130 S.Ct. 2433, 2440 (2010)).

Nipponkoa Ins. Co., 2011 WL 671747 at *2.

Here, not only has Plaintiff failed to allege a Carmack claim in his Amended Complaint, he also does not fall within the class of persons entitled to bring such a claim. Pursuant to 49 U.S.C. § § 14706(a)(1), a motor carrier may be held liable for property damage to a shipment by "the person entitled to recover under the receipt or bill of lading." See  OneBeacon Ins. Co. v. Haas Industries, Inc., 634 F.3d 1092, 1097-98 (9th Cir. 2011) (standing for purposes of a Carmack claim is determined by the bill of lading).  Plaintiff was not the shipper and has no relationship to the shipment that Defendant Juodzevicius was hauling at the time of the accident, therefore he cannot assert a Carmack claim against TSG.

Finally, Plaintiff claims damages for personal injuries he sustained as a result of the collision.  As noted above, Carmack claims are for the "actual loss or injury to the *property*" damaged during transportation. 49 U.S.C. § 14706(a)(1) (emphasis added); see McGinn v. JB Hunt Transport, Inc., No. 10-cv-610-JPS, 2012 WL 124401, *3 (E.D.Wis. Jan. 17, 2012); (see TSG Reply Mem of Law at 1, Docket No. 108).

> Thus, to expand Carmack Amendment preemption to cases in which a plaintiff seeks to hold a carrier liable, not for damage or loss of the goods, but rather for personal injuries allegedly caused by the carrier's negligence in the transport of those goods, would seem to be at odds with both the plain language of the statute and the purpose behind its enactment.

McGinn, 2012 WL 124401 at *3.  On this point, Plaintiff refers in his opposition to 49 U.S.C. § 14704(a)(2), which provides that a "carrier or broker providing transportation or service . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker." (Pl's Mem in Opp'n at 21.)  In addition to Plaintiff's failure to raise such a Motor Carrier Act claim in his Amended Complaint, or even clearly articulate one in his opposition papers, this statute also does not create a private right of action to recover for personal injuries sustained by a motorist struck by a tractor-trailer driver.  See Lipscomb v. Zurich Am. Ins. Co., Civ. No. 11-2255, 2012 WL 1902595, *2-3 (E.D. La. 2012); Crosby v. Landstar, No. Civ. 04-1535-SLR, 2005 WL 1459484, *2 (D. Del. June 21, 2005); Schramm v. Foster, 341 F. Supp. 2d 536, 547 (D. Md. 2004); Stewart v. Mitchell Transport, 241 F. Supp. 2d 1216, 1219-21 (D. Kan. 2002); but see Marrier v. New Penn Motor Express, Inc., 140 F. Supp. 2d 326, 329 (D. Vt. 2001).   Plaintiff's argument that TSG would be liable if found to be a motor carrier under federal law is therefore meritless.

    2.    Liability based on the "Trip Lease Agreement"

Plaintiff further argues that there is a material question of fact whether, due to AV's

7

signing and returning a "Trip Lease Agreement" to TSG, this document governed the relationship between these parties at the time of the accident. (Pl's Mem in Opp'n at 3-4, Docket No. 84; Higgins Aff. ¶¶ 5-9, Docket No. 83.) Plaintiff highlights the consideration of a truck lease agreement in Tartaglione v. Shaw's Express, Inc., 790 F. Supp. 438 (S.D.N.Y. 1992). At issue in that case was, among other things, whether one defendant's lease of the truck that collided with the plaintiffs' vehicle rendered that defendant liable for plaintiffs' personal injuries. The plaintiffs there argued that it did because the lease rendered the driver of the truck a "statutory employee" of the defendant. Id. at 440. Because the court found that the lease had been properly terminated prior to the accident at issue, summary judgment to the defendant was granted without consideration of the 'statutory employee' argument. Id. at 443.

Plaintiff argues that Tartaglione establishes the relevance of a truck lease to liability, and that there is a material question of fact here whether the lease is the governing agreement which renders summary judgment inappropriate. (Pl's Mem in Opp'n at 3-4, Docket No. 84.) Contrary to Plaintiff's assertion, however, the plain terms of the Trip Lease Agreement at issue here state that the agreement would not become effective until "the date on which it is signed by the parties," referencing both AV and TSG. (Higgins Aff. Ex A (Trip Lease Agreement ¶ 4), Docket No. 83.) It is undisputed that no representative of TSG signed this document.

Moreover, Plaintiff does not explain how this agreement would render TSG liable for Plaintiff's injuries even if it had been properly executed. Although entitled "Trip Lease Agreement," the substantive provisions address an agreement for TSG to act as AV's agent in the solicitation of business on AV's behalf. (Higgins Aff. Ex A.) There is nothing

8

in this document that would afford TSG control over any AV asset – truck or otherwise – or employee.  This argument is therefore also without merit.[2]

     3.     <u>Vicarious Liability under New York Law</u>

TSG argues that it cannot be held vicariously liable for Defendant Juodzevicius's negligence because there was no agency relationship with that defendant or AV at the time of the accident.  Instead, AV was an independent contractor.  Plaintiff argues that there is a triable issue of fact whether an agency relationship existed because "TSG had the right to control the manner of work of any subhauler it ultimately hired."  (Pl's Mem in Opp'n at 15-16, Docket No. 84.)

Although both TSG and Plaintiff cite cases from a variety of jurisdictions, they appear to agree that New York law applies to this negligence claim.  (TSG Mem of Law at 13; Pl's Mem in Opp'n at 20).  "Underlying the doctrine of vicarious liability – the imputation of liability to defendant for another person's fault, based on defendant's relationship with the wrongdoer – is the notion of control."  <u>Kavanaugh v. Nussbaum</u>, 71 N.Y.2d 535, 546, 523 N.E.2d 284 (1988).  "Agency is a jural relationship between a principal and an agent 'which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act.' " <u>LeBlanc v. Skinner</u>, 103 A.D.3d 202, 210, 955 N.Y.S.2d 391 (N.Y.A.D. 2d Dep't 2012) (quoting <u>Maurillo v. Park Slope U-Haul</u>, 194 A.D.2d 142, 146, 606 N.Y.S.2d 243 (N.Y.A.D.

---

[2]This Court will afford Plaintiff's counsel the benefit of the doubt and assume this and the prior Carmack Amendment arguments were simply poorly developed, and not a disingenuous attempt to use frivolous arguments to create the appearance of a question of fact.  Counsel is reminded, however, that meritless arguments presented in bad faith for the sole purpose of harassing, delaying, or needlessly increasing the cost of litigation for the opposing party may form the basis for sanctions under the Federal Rules of Civil Procedure.  <u>See</u> Fed. R. Civ. P. 11(b)(2), 56(h).

2d Dep't 1993)).  In contrast, the general rule[3] in New York "is that an employer who hires an independent contractor is not liable for the independent contractor's negligent acts." Rivera v. Fenix Car Serv. Corp., 81 A.D.3d 622, 623, 916 N.Y.S.2d 169 (N.Y.A.D. 2d Dep't 2011).  "[A]n independent contractor is a person who contracts with another to do something for him but who is not controlled by the other or subject to the other's right to control and with respect to his physical conduct in the performance of the undertaking." E.B.A. Wholesale Corp. v. S.B. Mechanical Corp., 127 A.D.2d 737, 739, 512 N.Y.S.2d 130 (N.Y.A.D. 2d Dep't 1987) (quotation marks and brackets omitted); Tartaglione, 790 F. Supp. at 441 (applying New York law).  "Control of the method and means by which work is to be performed, therefore, is a critical factor in determining whether one is an independent contractor or an employee for the purposes of tort liability." Melbourne v. New York Life Ins. Co., 271 A.D.2d 296, 297, 707 N.Y.S.2d 64 (N.Y.A.D. 1st Dep't 2000). Although this factor often involves a question of fact, where the evidence presents no conflict, the matter may properly be determined by a court as a matter of law.  Melbourne, 271 A.D.2d at 297.

Notably, the fact that a defendant "controlled the location where the cargo was picked up and delivered does not establish an agency relationship because such control involves only the result of the work and not the manner in which it is undertaken." Tartaglione, 790 F. Supp. at 441 (owner and truck driver who had choice of routes and furnished own gas and oil were independent contractors); Santella v. Andrews, 266 A.D.2d

---

[3]There are several exceptions to this general rule, such as where the independent contractor is hired to perform a non-delegable duty of the employer, the work is inherently dangerous, or where the claim against the employer is based on negligence in selecting, instructing, or supervising the contractor. Brothers v. N.Y.S. Elec. & Gas, 11 N.Y.3d 251, 258, 898 N.E.2d 539 (2008).  Plaintiff does not argue that any such exception applies here.

62, 63, 698 N.Y.S.2d 631 (N.Y.A.D. 1st Dep't 1999) (distributor's requirement that newspapers be delivered by a certain hour amounts to nothing more than general supervisory control which is insufficient to establish an employer-employee relationship), *lv denied*, 94 NY2d 762 (2000). A tractor-trailer driver or carrier who furnishes his own truck, sets his own route, is paid by the job, and may take on work from other clients is properly found to be an independent contractor as a matter of law. Shapiro v. Robinson, 102 A.D.2d 822, 476 N.Y.S.2d 596 (N.Y.A.D. 2d Dep't 1984), *aff'd*, 63 N.Y.2d 896 (1984). Indeed, "[u]nless there is some indication that the party availing himself of the carrier's services has some control over the carrier's employees and the manner in which they perform their duties there is no basis to suppose the existence of a master-servant relationship." DeFeo v. Frank Lambie, Inc., 146 A.D.2d 521, 521, 536 N.Y.S.2d 459 (N.Y.A.D. 1st Dep't 1989); see Rokicki v. 24 Hour Courier Serv., 294 A.D.2d 555, 555, 744 N.Y.S.2d 41 (N.Y.A.D. 2d Dep't 2002) (bicycle courier was independent contractor as a matter of law where he owned his own bicycle, used his own judgment on when and how to make deliveries, wore no uniform, was paid only for each delivery he made, and was free to make deliveries for other companies);  cf. Christ v. Ongori, 82 A.D.3d 1031, 1032, 918 N.Y.S.2d 800 (N.Y.A.D. 2d Dep't 2011) (triable question of fact raised by evidence that driver was required to wear the defendant's logo, lease a two-way radio with which to communicate directly with the defendant during deliveries, and comply with additional pickups ordered by defendant); Halpin v. Hernandez, 51 A.D.3d 724, 724-25, 857 N.Y.S.2d 719 (N.Y.A.D. 2d Dep't 2008) (triable issue of fact raised by evidence that driver worked exclusively for the defendants, truck bore defendants' logo, and driver was restricted to selling the merchandise he carried only the defendants' customers).

11

Here, TSG had no control over AV's choice of Defendant Juodzevicius as the driver for the shipment, the route chosen for the shipment's delivery, or the selection of tractor or trailer used.  (Aff of Todd Berger ¶¶ 10-14, Docket No. 75; Simkus Dep at 73, Wallace Aff Ex H, Docket No. 75; Simkus Dep at 16-17, 63, Wallace Aff Ex I, Docket No. 75.)  The Contract Carrier Agreement between TSG and AV is non-exclusive, and provides that AV can pick and choose which shipments it accepts from TSG. (Wallace Aff Ex T ¶ 1.1, Docket No. 75 (discussing "accepted shipments").) This agreement also expressly recognizes that AV has "no authority to act for, bind or otherwise obligate" TSG and that "all drivers of any motor vehicles employed by [AV] in connection with the transportation of commodities under this Agreement are, and shall at all times, remain subject to the direction, control and supervision of [AV]." (Id. ¶ 1.5-1.6.) Further, AV was responsible for all drivers' compensation and  fuel costs associated with an accepted shipment. (Id. ¶ 4.2; Simkus Dep at 76, Wallace Aff Ex H.)

There is no indication in the record that TSG and AV acted contrary to this agreement.  AV was the sole owner of the tractor and trailer involved in the collision. (Simkus Dep at 25, Wallace Aff Ex H, Docket No. 75; Dep of Todd Berger at 201, Wallace Aff Ex K, Docket No. 75.)  Although AV's dispatcher might call the shipper (here, Berry Plastics) occasionally regarding details, TSG never communicated directly with any of AV's drivers.  (Berger Dep at 103-4, 107, Wallace Aff Ex K, Docket No. 75; Simkus Dep at 73, Wallace Aff Ex H, Docket No. 75; Dep of Christopher Thornycroft at 22, Wallace Aff Ex O, Docket No. 75.)   Similarly the AV drivers were expected to communicate with AV's dispatcher, not TSG. (Berger Dep at 107).

Plaintiff argues that TSG's lack of communication with Defendant Juodezevicius is

irrelevant because it is the right to control that is dispositive, not whether TSG exercised that right.  (Pl's Mem in Opp'n at 15, Docket No. 84.)  Plaintiff therefore relies on the fact that the original shipper, Berry Plastics, gave control over the shipment to TSG.  (Pl's Mem of Law in Opp'n at 19, Docket No. 84; Higgins Aff ¶¶ 40-41, Docket No. 83.) This does not create an issue of fact whether TSG, in turn, had the right to control Defendants AV and Juodezevicius.  Nor does it tend to establish that these Defendants consented to TSG's control such that an agency relationship existed.  Indeed, if Plaintiff did have evidence that TSG controlled the manner in which AV transported the shipment – for example, controlled the number of hours Defendant Juodezevicius was required to drive on the day of the accident – it is unclear why the second cause of action was voluntarily dismissed with respect to TSG.  (See Am. Compl. ¶¶ 30-32 (alleging punitive damages are warranted because defendant violated safety law designed to avoid fatigue related collisions); Voluntary Dismissal, Docket No. 73.)  Because Plaintiff offers no evidence  to dispute TSG's showing that AV remained in control over the manner and method by which the shipment was delivered, TSG's motion for summary judgment is granted. See Rokicki, 294 A.D.2d at 555; DeFeo, 146 A.D.2d at 521.

> 4.    Motion to Strike/Preclude Expert Witness

TSG's motion to strike or preclude the affidavit of proposed expert witness David G. Dwinell is moot in light of this Court's conclusions above.  Specifically, because Plaintiff is not seeking damages for loss of property under the Carmack Amendment or Motor Carrier act, Dwinell's opinion whether TSG is a motor carrier for the purposes of those federal laws is irrelevant to any issue before the Court.  (See Higgins Aff Ex P, Docket No. 83 (Dwinell opines in his report that TSG is strictly liable for any loss from the collision due to its

conduct as a motor carrier).)

**B.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment on the issues of Defendant Juodzevicius' negligence, AV's vicarious liability for that negligence, the causal connection between Defendant Juodzevicius' negligence and the accident, and that Plaintiff suffered a serious injury as defined by New York Insurance Law § 5102(d).  (Pl's Mem of Law, Docket No. 76.) Plaintiff also requests that this Court strike the AV Defendants' affirmative defense based on Plaintiff's culpable conduct.  The AV Defendants argue that there are issues of fact with respect to both negligence and serious injury that render summary judgment inappropriate.  (AV Mem of Law at 8-14, Docket No. 91.)

1.     <u>Negligence</u>

Plaintiff argues that he is entitled to summary judgment on the issue of Defendant Juodzevicius' negligence, for which AV is vicariously liable, because a rear-end collision establishes a prima facie case of liability under New York law.  (Pl's Mem of Law at 2-6, Docket No. 76); <u>see</u> <u>Krynski v. Chase</u>, 707 F. Supp. 2d 318, 322-23 (E.D.N.Y. 2009) (presumption of negligence based on both common law and New York Vehicle and Traffic Law).  Plaintiff further asserts that Defendant Juodzevicius has already acknowledged that his negligence caused the accident.  (Pl's Mem of Law at 3, Docket No. 76.)  Plaintiff also seeks dismissal of AV's first affirmative defense based on Plaintiff's alleged culpable conduct.  (<u>Id</u>. at 1.) The AV Defendants respond that the rear-end collision creates only a rebuttable presumption, and that a jury should be permitted to consider whether wet road conditions absolve Defendant Juodzevicius of any presumed negligence. (AV Mem in Opp'n at 9-10, Docket No. 91).

The AV Defendants are correct that a prima facie case of negligence merely shifts the burden to the operator of the rearmost vehicle.  DeLouise v. S.K.I. Wholesale Beer Corp., 75 A.D.3d 489, 490, 904 N.Y.S.2d 761 (N.Y.A.D. 2d Dep't 2010); Krynski, 707 F. Supp. 2d at 323.  Here, however, Plaintiff also submitted a sworn affidavit from Defendant Juodzevicius in which he stated:

> The collision occurred after I had passed two other "Lane Closed" vehicles warning of lane closing ahead.  The Thruway Authority vehicle I struck was at a stop with its rear "Lane Closed" lights operating.
>
> The collision was caused by my going faster than I should have under the conditions and circumstances, and I was at fault in causing the collision.  The occupant of the stopped Thruway Authority truck that I collided into did nothing wrong to cause or contribute to this collision.

(Higgins Aff Ex I, Docket No. 76.)  At his deposition, Defendant Juodzevicius admitted to preparing this document with the assistance of an attorney, and that he swore to the truth and accuracy of the information therein after reviewing it.  (Juodzevicius Dep at 78-89, Higgins Aff Ex G.)  Further, there is no dispute that the defendant was acting within the scope of his employment at the time of the accident.  Plaintiff is therefore entitled to summary judgment on the issues of negligence and the lack of any culpable conduct on the part of Plaintiff.

   2.   Serious Injury

In order to weed out frivolous claims and limit recovery to significant injuries, New York's No Fault law requires that a plaintiff commencing an action for damages as a result of a motor vehicle accident establish that he or she sustained a serious injury. See N.Y. Insurance Law § 5104(a); Pommells v. Perez, 4 N.Y.3d 566, 571, 830 N.E.2d 278 (2005); Toure v. Avis Rent A Car Sys., 98 N.Y.2d 345, 350, 774 N.E.3d 1197 (2002); Dufel v.

Green, 84 N.Y.2d 795, 798, 647 N.E.2d 105 (1995).

> "Serious injury" means a personal injury which results in death;
> dismemberment; significant disfigurement; a fracture; loss of a fetus;
> permanent loss of use of a body organ, member, function or system;
> permanent consequential limitation of use of a body organ or member;
> significant limitation of use of a body function or system; or a medically
> determined injury or impairment of a non-permanent nature which prevents
> the injured person from performing substantially all of the material acts which
> constitute such person's usual and customary daily activities for not less than
> ninety days during the one hundred eighty days ["90/180"] immediately
> following the occurrence of the injury or impairment.

N.Y. Insurance Law § 5102(d).

To establish a serious injury, a plaintiff must provide objective medical evidence,

inasmuch as subjective complaints alone are insufficient.  Toure, 98 N.Y.2d at 350; Yong

Qin Luo v. Mikel, 625 F.3d 772, 777 (2d Cir. 2010).  Whether a plaintiff has met this prima

facie burden is a threshold question of law for the court to determine. Yong Qin Luo,  625

F.3d at 776-77; Licari v. Elliott, 57 N.Y.2d 230, 236, 441 N.E.2d 1088 (1982).

> In order to prove the extent or degree of physical limitation, an expert's
> designation of a numeric percentage of a plaintiff's loss of range of motion
> can be used to substantiate a claim of serious injury. An expert's qualitative
> assessment of a plaintiff's condition also may suffice, provided that the
> evaluation has an objective basis and compares the plaintiff's limitations to
> the normal function, purpose and use of the affected body organ, member,
> function or system. When supported by objective evidence, an expert's
> qualitative assessment of the seriousness of a plaintiff's injuries can be
> tested during cross-examination, challenged by another expert and weighed
> by the trier of fact.  By contrast, an expert's opinion unsupported by an
> objective basis may be wholly speculative, thereby frustrating the intent of
> [New York's] No-Fault Law to eliminate statutorily-insignificant injuries or
> frivolous claims.

Toure, 98 N.Y.2d at 350-51 (internal citations and emphasis omitted); see Yong Qin Luo,

625 F.3d at 777; Dufel, 84 N.Y.2d at 798.

Here, Plaintiff argues that his injuries qualify under the "significant limitation" and

"90/180" categories of section 5102(d). (Pl's Mem of Law at 6, Docket No. 76.) The determination of whether a plaintiff has a serious injury under the significant limitation of use category " 'relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part' " Toure, 98 N.Y.2d at 353 (quoting Dufel, 84 N.Y.2d at 798); see also Matte v Hall, 20 A.D.3d 898, 899, 798 N.Y.S.2d 829 (N.Y.A.D. 4th Dep't 2005). For this reason, evidence of a herniated or bulging disc is not alone sufficient to establish a serious injury for the purposes of section 5102(d). Toure, 98 N.Y.2d at 353 n.4. The determination must instead be supported by objective proof, such as "a physician's designation of a numeric percentage of a plaintiff's loss of range of motion," Matte, 20 A.D.3d at 899 (quoting Toure, 98 N.Y.2d at 350) (internal quotation marks omitted), or "documented objective evidence of injury, i.e., muscle spasm, x rays and an MRI showing loss of lordosis." Mancuso v Collins, 32 AD3d 1325, 1326 (N.Y.A.D. 4th Dep't 2006).  Similarly, a serious injury under the 90/180 category also must be supported by objective medical evidence in admissible form establishing that the injury caused the alleged limitations in daily activity during the relevant time period.  Labeef v. Baitsell, 104 A.D.3d 1191, 1192, 960 N.Y.S.2d 809 (N.Y.A.D. 4th Dep't 2013); see Jean-Louis v. Gueye, 94 A.D.3d 504, 505, 942 N.Y.S.2d 52 (N.Y.A.D. 1st Dep't 2012) (prima facie 90/180 case established by evidence that the plaintiff's orthopaedic surgeon directed plaintiff to remain out of work and to substantially restrict day-to-day activities).

In support of his motion, Plaintiff first submits two affirmations of treating physicians. (Higgins Aff Exs N, O, Docket No. 76.)  Dr. Matteliano affirmed that Plaintiff:

suffered left shoulder impingement; cervical disc injuries and herniations at

> C3-4, C4-5, C5-6 and C6-7; lumbar disc injuries and herniations at multiple levels including L2-3, L3-4, L4-5 and L5-S1; multiple level thoracic disc injuries/herniations with cord compression and neuro impingement, most pronounced where there was (before surgery) a large herniation flattening the spinal cord.

(Higgins Aff Ex N at 1.)  This physician further stated that "on [his] many exams" Plaintiff had a cervical spine restriction to 40° of a normal 80° range, a lumber spine bending restriction to "approximately 40-50° (normal is 90°)," and a left shoulder abduction range from 120-150° of a normal 180° range.  (Id. at 3.) Although this appropriately states a quantitative range of motion, Dr. Matteliano does not indicate what objective tests were used to obtain these results, whether the results were based on Plaintiff's subjective complaints, or when in relation to the accident these "many" examinations were conducted. See Tandoi v. Clarke, 75 A.D.3d 896, 897 n. 1, 906 N.Y.S.2d 628 (N.Y.A.D. 3d Dep't 2010) (assignment of specific percentages of motion loss insufficient to establish entitlement to summary judgment absent indication of specific objective tests used to obtain results); Parreno v. Jumbo Trucking, Inc., 40 A.D.3d 520, 523, 836 N.Y.S.2d 593 (N.Y.A.D. 1st Dep't 2007) (objective tests for both quantitative and qualitative assessments must be identified); see also Cirillo v. Swan, 95 A.D.3d 1401, 1402, 943 N.Y.S.2d 300 (N.Y.A.D. 3d Dep't 2012); Candia v. Omonia Cab Corp., 6 A.D.3d 641, 643, 775 N.Y.S.2d 546 (N.Y.A.D. 2d Dep't 2004); Wiegand v. Schunck, 294 A.D.2d 839, 840, 741 N.Y.S.2d 360 (N.Y.A.D. 4th Dep't 2002).  Further, Dr. Matteliano acknowledges that Plaintiff had a history of back pain predating the accident, but fails to state on what evidence he relied in opining that Plaintiff was asymptomatic "for a long period prior to May 2008." (Higgins Aff Ex N at 2.) Indeed, although this physician discusses treatment of Plaintiff by other doctors, there is no indication of what records were reviewed for the purpose of the submitted affirmation,

nor were any medical records from either before or after the accident submitted.

The affirmation of Dr. Andrew Cappuccino, also submitted on behalf of Plaintiff, is similarly deficient.  Although Dr. Cappuccino asserts a quantitative degree of movement loss in Plaintiff's cervical and lumbar spine, (Higgins Aff Ex O at 2, 4), the physician does not indicate when these results were obtained or what objective medical tests were used. Indeed, although Dr. Cappuccino is a treating physician, the assessments of cervical spine motion loss appears to be based on undated cervical MRIs rather than any personal examination of Plaintiff. (Id. at 2.)  Further, the assertion that "[w]hile [Plaintiff] had some prior degenerative changes in his lumbar spine, the disc herniations were caused by the collision" is simply conclusory.  (Id. at 4.)

Finally, Plaintiff's expert radiologist,[4] Dr. Gurmeet Dhillon, is the only physician to submit an affirmation in support of Plaintiff's motion that discusses Plaintiff's medical records prior to the accident.  (Higgins Aff Ex P.)  In disagreeing with the opinion of AV's expert that Plaintiff's spinal injuries were degenerative rather than causally related to the accident, Dr. Dhillon considered a July 2007 abdominal CT scan which "partially imaged" Plaintiff's back.  (Id. at 3.)  Dr. Dhillon conceded that this image "does not show the actual discs well," but opined that "if the very large herniation [Plaintiff] sustained at T8-9 pre-existed the May 2008 collision it would be visible in the axial 2007 CT scan and it is not." (Id.)  In opposition, AV's expert radiologist, Dr. Pearson,  opined that the same CT scan "visualizes Plaintiff's thoracic spine, including the T8-9 level, and clearly shows multilevel degenerative disc disease with spurring." (Decl of Kenneth D. Pearsen, M.D. ¶ 8, Docket

---

[4]There is no indication in this affirmation that Dr. Dhillon ever treated Plaintiff or reviewed his medical records prior to litigation.

No. 88.)  Further, AV's expert orthopaedic surgeon opined, based on his examination of Plaintiff and review of the medical records specified in his report, that the "disc bulging and disc herniations throughout [Plaintiff's] cervical, lumbar and thoracic spine . . . would be . . . inconsistent with a traumatic event and more consistent with a degenerative event." (Decl of Christopher Hamill, M.D., Ex 2 at 34-35.)   Accordingly, even if there were appropriately detailed objective medical evidence supporting the opinions of Plaintiff's treating and expert physicians, the AV Defendants raised a triable issue of fact with respect to causation that renders summary judgment on the issue of serious injury under any New York Insurance Law § 5102(d) category inappriopriate at this time.

## C.    AV's Cross-Motion to Dismiss Punitive Damages Claim

The AV Defendants argue that Plaintiff's second cause of action must be dismissed because there is no evidence of wanton, malicious, or grossly negligent conduct warranting the imposition of punitive damages under New York law.  (AV Mem of Law at 6-8, Docket No. 91.)  Plaintiff argues that this cross-motion was untimely filed after the deadline for the filing of dispositive motions, and should be dismissed as time-barred. (Docket No. 95 (Motion to Deem Cross-Motion Time-Barred); see Docket No. 103 (AV's Cross-Motion to Modify the Case Management Order).)  He further argues that the issue of punitive damages should be given to the jury because any lack of evidence is the result of AV's destruction of Juodzevicius's log book from the relevant trip. (Pl's Mem of Law at 1-2, Docket No. 111; Higgins Aff ¶¶ 41-42, Docket No. 98.)

### 1.    Timeliness of Cross-Motion

This Court finds that the AV Defendants have established good cause for not moving for partial summary judgment on the issue of punitive damages until their

opposition. Defendants' counsel avers that there was no plan to file a dispositive motion until Plaintiff's motion for partial summary judgment was reviewed.  (Decl. of Megan K. Dorritie, Esq, ¶ 10, Docket No. 104.)  At that time, this litigation strategy was reassessed because the granting of partial summary judgment on negligence would remove many of the facts about the accident from the jury's purview, to Defendants' possible detriment. (Id.)  Further, although Plaintiff asserts that the issue of punitive damages was not raised in his motion, (Higgins Aff ¶ 8), the negligence argument asserted therein was based upon a presumption of negligence raised by the rear-end character of the collision and Defendant Juodzevicius' violation of New York Vehicle & Traffic Law § 1110(a) (failure to obey a traffic control device).  (Pl's Mem of Law at 1-4, Docket No. 76; Pl's St of Facts ¶ 10, Docket No. 76-1.)  Notably, Plaintiff never alleged a causal connection between Defendant Juodzevicius's purported failure to properly maintain log books or any excessive hours of operation – the grounds asserted for his punitive damages claim – and the accident itself.  Accordingly, the AV Defendants' assertion of this issue for the first time in its timely opposition to Plaintiff's motion was not in bad faith.

Further, the Court finds that there is no prejudice to Plaintiff, who has already filed an opposition to the merits of the AV Defendants' motion. (See Higgins Aff ¶¶ 40-45, Docket No. 98; Pl's Mem of Law, Docket No. 111-1.)  Plaintiff's motion to deem the cross-motion time-barred (Docket No. 95) is therefore denied and the AV Defendants' motion for a modification of the case management order, such that their cross-motion for partial summary judgment may be considered timely filed, is granted. (Docket No. 103.)

2.    Punitive Damages Claim

In Plaintiff's second cause of action, he alleges that punitive damages are warranted

because "Defendant intentionally and purposely operated [the] tractor and trailer for excessive hours and failed to make and keep proper and required records regarding said hours of operation all in violation of safety laws intended to prevent incidents such as the subject collision." (Am. Compl. ¶ 31.) The AV Defendants argue that this claim must be dismissed because there is no evidence of wanton, malicious, or grossly negligent conduct. (AV Mem of Law at 6-8, Docket No. 91.) This Court agrees.

"Punitive damages are available to vindicate a public right only where the actions of the alleged tortfeasor constitute either gross recklessness or intentional, wanton or malicious conduct aimed at the public generally, or were activated by evil or reprehensible motives." Rodgers v. Duffy, 95 A.D.3d 864, 866, 944 N.Y.S.2d 175 (N.Y.A.D. 2d Dep't 2012). In opposing the AV Defendant's motion on this claim, Plaintiff relies on the fact that Defendant Juodzevicius was purportedly ticketed following the accident for a violation related to his log book. (Higgins Aff ¶ 45, Docket No. 98; Pl's Mem of Law at 4, Docket No. 111; Juodzevicius Dep at 40-42.) Specifically, he argues that "there is direct evidence that both Juodzevicius and Simkus of AV knew of the critical importance of strict adherence of log book requirements and the driving restrictions imposed thereby. Juodzevicius chose to not enter various information into his log book and was cited by state police accordingly." (Pl's Mem of Law at 4, Docket No. 111.) Plaintiff does not, however, allege that Juodzevicius had in fact been driving for a length of time that would amount to gross recklessness. (Id. (asserting only that Juodzevicius "spent the morning, afternoon and evening driving).) Nor does Plaintiff assert that the log book, which he alleges was improperly destroyed by AV, would contradict Defendant Juodzevicius' testimony that he had been driving for approximately ten hours at the time of the collision, one hour less than

22

the eleven hours he was permitted to drive in one day.  (Juodzevicius Dep at 27, 95-97, Ex G to Higgins Aff, Docket No. 76.) Instead, Plaintiff alleges that the log book would *not* contain any required information regarding the relevant trip.  Defendants' improper record keeping is not in and of itself sufficient to warrant submitting the issue of punitive damages to the jury, especially where Plaintiff does not argue that any excess hours driven by Defendant Juodzevicius contributed to the collision.  The AV Defendant's cross-motion to dismiss the second cause of action is granted.

## IV. CONCLUSION

TSG's motion for summary judgment dismissing the complaint as against it is granted.  Plaintiff has established his entitlement to summary judgment on the issue of negligence, but similar relief to either party on the serious injury issue is inappropriate on this record.  Finally, the Court deems the AV Defendants cross-motion timely filed and grants these defendants summary judgment on the issue of punitive damages.

## V. ORDERS

IT HEREBY IS ORDERED that TSG's Motion for Summary Judgment (Docket No. 81) is GRANTED in its entirety and the Amended Complaint is dismissed as against it;

FURTHER, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 76) is GRANTED in part and DENIED in part;

FURTHER, that the AV Defendants' Cross-Motion for Partial Summary Judgment (Docket No. 86) is GRANTED and the second cause of action is dismissed;

FURTHER, that Plaintiff's Motion to Deem the AV Defendants' Cross-Motion for Partial Summary Judgment Time-Barred (Docket No. 95) is DENIED;

FURTHER, that the AV Defendants' Cross-Motion to Modify the Case Management Order (Docket No. 103) is GRANTED;

FURTHER, that TSG's Motion to Strike the Affidavit and Testimony of Plaintiff's Expert Witness (Docket No. 107) is DISMISSED as moot.

SO ORDERED.


Dated: January 6, 2014
        Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Judge